UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEANINE MOMMAERTS,

        Plaintiff,

    v.                                                   Case No. 05-C-0894

THE HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

        Defendant.

---

## DECISION AND ORDER

After the Hartford Life and Accident Insurance Company denied her application for long-term disability benefits, Jeanine Mommaerts filed suit under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* Jurisdiction exists in this court because the suit involves a question of federal law. *See* 28 U.S.C. § 1331. Both parties have now moved for summary judgment. For the following reasons, Mommaerts' motion will be denied, and Hartford's granted.

## BACKGROUND

Mommaerts worked as a marketing representative for the Children's Hospital and Health System from July 1, 2002, until January 17, 2003, when she took a leave of absence. (HART001545.) Her position occasionally required her to lift up to ten pounds, very infrequently required her to lift up to thirty-five pounds, and entailed driving five to eight hours per day four days

a week.[1] (HART001514.) Children's Hospital provided Mommaerts with long-term disability insurance through a group plan purchased from Hartford. (HART000132.) On July 13, 2003, Mommaerts applied for benefits under that plan. She stated in her application that she stopped working because of fatigue, depression, and an inability to focus. (HART001549.) She identified symptoms of fatigue, depression, lack of concentration, balance problems, and neck problems beginning in October 2002. (HART001548.)

Under the terms of Hartford's plan, a participant is disabled if she is unable to perform one or more of the essential duties of her occupation and, as a result, earns less than 80% of her pre-disability income. To qualify for long-term disability benefits, the participant must meet that definition on the date she leaves her employment and throughout a qualifying period of six months. Thereafter, the participant must continue to establish that she is disabled to receive ongoing benefits.

To determine whether Mommaerts was unable to perform her own occupation, Hartford's Medical Clinical Case Manager and Behavioral Health Case Manager reviewed her medical files. Based on that review, Hartford determined that Mommaerts was not unable to perform her occupation on January 17, 2003, or at any time thereafter. Mommaerts filed an administrative appeal, which she supported with the opinions of Dr. Robert Mead (Mommaerts' primary care physician at the time she applied for benefits), Dr. Mazen Khalisky (her new primary care physician) and a letter from a personal friend, Nancy Burkholder, that detailed Mommaerts' withdrawal from strenuous activity. (DPFOF ¶¶ 51-55.)

---

[1] In its letter denying Mommaerts' application for benefits, Hartford described her job as "essentially sedentary work [that] requires a significant amount of driving." (HART001065.)

In considering Mommaerts' appeal, Hartford obtained reviews of Mommaerts' medical file from Dr. Andrea Wagner, a physiatrist, and Dr. Irwin M. Greenberg, a psychiatrist. Dr. Wagner concluded that no specific physical limitation prevented Mommaerts from performing any of the essential duties of her occupation. She made the following findings:

- No physician has documented any condition or impairment that would require substantial functional restrictions.

- There is no evidence of any condition documented in the record that would be affected by occupational functioning.

- There is no evidence of any significant physical impairment retroactive to January of 2003.

(HART000254; HART000256.)

Dr. Greenberg also concluded that no specific psychiatric limitation prevented Mommaerts from working full-time in her own occupation. He made the following findings:

- Ms. Wentland's [Mommaerts' treating nurse practitioner] thoughts concerning limitations about workability . . . are entirely based on physical considerations and are not of psychiatric origin.

- [Mommaerts'] complaints appear to be based on her physical condition . . .

- [Mommaerts'] subjective complaints noted in the documentation do not appear to reflect significant depression which would have induced work impairments . . .

- [T]here are no objective data supporting the presence of functional impairments induced by psychiatric disorder necessitating any specific restrictions since 1/20/03.

- There are no work activities or situations which should have been avoided or limited because of psychiatric disorder.

(HART000277-79.) Hartford denied Mommaerts' appeal on July 20, 2004. (DPFOF ¶ 64.) She brought this lawsuit on August 19, 2005.

3

**ANALYSIS**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The plan provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the [plan]." (HART000165.) The

4

parties agree that this language requires the court to review Hartford's decision to deny benefits under a deferential standard. Mommaerts contends, however, that the court's review should be influenced by Hartford's "possible conflict of interest" (Br. in Opp. at 4), which arises out of the fact that Hartford must itself pay any benefits it decides to award and the fact that the persons who reviewed Mommaerts' application were on Hartford's payroll. The Seventh Circuit has rejected the notion that a conflict of interest–absent evidence that the insurer "pays its staff more for denying claims than for granting them"–alters the standard of review in cases such as this one. *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004). Plaintiff's citation to *Davis v. Kentucky*, 887 F.2d 689, 694 (6th Cir. 1989), *cert. denied*, 495 U.S. 905 (1990), does not convince the court to depart from the rule laid down by the Seventh Circuit.

Deferential review requires the court to uphold Hartford's denial of benefits unless that denial was arbitrary and capricious. *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147-49 (7th Cir. 1998). Hartford's decision to deny benefits was arbitrary and capricious only "if it was based on an unreasonable interpretation of plan documents or an unreasonable application of facts." *Sova v. Wheaton Franciscan Services, Inc. Health and Welfare Ben. Trust*, 40 F. Supp. 2d 1031, 1039 (E.D. Wis. 1999). If Hartford's decision was "one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached," this court cannot disturb it. *Id.* (quoting *Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990)); *see also Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985) ("The 'arbitrary or capricious' standard calls for less searching inquiry than the 'substantial evidence' standard that applies to Social Security disability cases. Although it is an overstatement to say that a decision is not arbitrary or capricious whenever

5

a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement. The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. Any questions of judgment are left to . . . the administrator of the Plan.").

Mommaerts maintains that Hartford arbitrarily and capriciously denied her benefits. She first objects that Hartford declined to pay approximately $500 for labs, tests, and consent forms. She does not specify what in these documents might have led Hartford to make a different determination. The court thus cannot conclude that Hartford acted arbitrarily or capriciously in making its determination without them.

Mommaerts also argues that Hartford's decision to conduct a paper review, rather than to have her examined by an independent medical examiner, "should raise questions about the thoroughness and accuracy of the determination." (Br. in Opp. at 4-5.) Nothing in the plan obligated Hartford to refer Mommaerts to an independent medical examiner. The fact that it did not do so does not render its decision arbitrary and capricious. *See Wallace v. Reliance Standard Life Ins. Co.*, 318 F.3d 723, 724 (7th Cir. 2003) (holding ERISA does not require disability insurer to seek out additional evidence supporting insured's claim when claimant's own medical evidence was inadequate).

More substantively, Mommaerts objects that Hartford "did not ask Dr. Wagner or Dr. Greenberg to address any disability due to [her] disc herniations." (Br. at 2.) Mommaerts did not identify disc herniations, or the neck pain resulting therefrom, as a reason for her inability to work in her application for benefits. In response to the question on Hartford's form that asked, "What aspect of your condition made you unable to work?" Mommaerts answered "fatigue, depression, [and] inability to focus." (HART001549.) Mommaerts now contends that her neck problems

6

Case 1:05-cv-00894-WCG   Filed 06/12/06   Page 6 of 9   Document 43

precluded her from driving, an essential duty of her occupation. However, Mommaerts stated in her application that she had to limit her driving *before* she stopped working (*id.*), which would seem to indicate that limitations on driving did not keep Mommaerts from performing the essential duties of her occupation. A court will permit a party to rise no higher than her pleadings; it is difficult to see how Hartford is guilty of arbitrariness or capriciousness for doing likewise with an application for benefits.

The first mention of Mommaerts' disc herniations as a possible disabling condition comes in Dr. Mead's Attending Physician's Statement of Disability, completed in August 2003. At that time, Dr. Mead indicated that Mommaerts would be restricted in standing, walking, driving, and keyboard use for three to six months. However, on November 21, 2003, Dr. Mead told Hartford's Medical Clinical Case Manager that Mommaerts was "not disabled from a physical perspective and [wa]s able to work 8 hrs/day w/o restrictions." (HART000470.) Dr. Mead declined to opine at that time on whether Mommaerts' psychological problems were disabling. (*Id.*) Hartford relied on Dr. Mead's November 21 statements in denying Mommaerts' claim. (HART001067.) Mommaerts objects to this reliance in light of a March 24, 2004, letter in which Dr. Mead disputed Hartford's characterization of what he told the Medical Clinical Case Manager:

> [Y]ou recorded that I said that [Mommaerts] was capable of working from a physical standpoint but this was incorrect. I had stated that her neck fatigue and dizziness issues were being taken care of by another physician and he would have that information and that my main concern was for her depression which was causing significant disability problems. Since then I have talked to her physician, [a] physiatrist by the name of Dr. Staehler who has sent me information concerning [Mommaerts'] neck issue and has concurred that she indeed has had significant problems with this and that she is disabled to [sic] performing her job which involves a lot of driving.

(HART000510.) Based on the opinion's of her treating physicians, Mommaerts argues Hartford should have found her disabled.

7

But there is no "treating physician" rule under ERISA. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Even if there was, the absence of medical findings supported Hartford's decision not to confer upon it controlling weight. Moreover, Hartford was not obliged to credit Dr. Mead's reconstruction of his statements at four months' distance rather than its Medical Clinical Case Manager's contemporaneous characterization of those statements. The court cannot characterize Hartford's reliance on the latter as irrational.

On appeal, Hartford also relied on Dr. Wagner's review of Mommaerts' medical file. Dr. Wagner rejected Dr. Mead's conclusion that plaintiff was disabled because his diagnosis was non-specific and largely based on Mommaerts' self-reports. (HART000255.) Dr. Wagner also noted that neither of the two neurologists who examined Mommaerts found evidence of any condition that significantly limited Mommaerts' sitting, standing, walking, lifting, carrying, pushing or pulling, reaching, gross and fine motor activities, or driving. (*Id.*) Even Dr. Staehler, upon whom Dr. Mead based his own opinion, had concluded in July of 2003 that there was no evidence of cervical radiculopathy or plexopathy. (Hart001293.) At an August 2003 visit, Dr. Staehler found noted improvement in Mommaets' neck discomfort. Dr. Staehler noted she had mild myofascial discomfort in the upper trapezius and levator scapulae muscles, was nontender to palpitation along the cervical paraspinal muscles, and had full strength and tone in her upper extremities. (Hart001375.) Dr. Wagner made a rational connection between the evidence she examined and the conclusion she reached. Hartford's reliance upon her conclusion was not unreasonable, arbitrary or capricious. The court cannot disturb that conclusion.

8

Case 1:05-cv-00894-WCG   Filed 06/12/06   Page 8 of 9   Document 43

## CONCLUSION

For the foregoing reasons, the court concludes that Hartford acted within its discretion in denying Mommaerts' claim for benefits. Accordingly, its motion for summary judgment is hereby **GRANTED**, and Mommaerts' motion is **DENIED.**

**SO ORDERED.**

Dated this 12th day of June, 2006.

s/ William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge
